IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GAUCHO GROUP HOLDINGS, INC., ) | |
| ) | |
| Plaintiff/Counterclaim-Defendant, ) | |
| ) | |
| v. ) | C.A. No. 24-212 (MN) |
| ) | |
| 3I LP, 3I MANAGEMENT LLC, and ) | |
| MAIER JOSHUA TARLOW, ) | |
| ) | |
| Defendants/Counterclaim-Plaintiffs. ) | |

**<u>MEMORANDUM OPINION</u>**

Daniel M. Silver, Daniel J. Brown, McCarter & English, LLP, Wilmington, DE; Eric J. Benzenberg, Waleed Amer, The Basile Law Firm P.C., Jericho, NY – Attorneys for Plaintiff/Counterclaim-Defendant Gaucho Group Holdings, Inc.

Katharine L. Mowery, Matthew W. Murphy, Richards, Layton & Finger, P.A., Wilmington, DE; Douglas B. Rosner, Jennifer Furey, Nathaniel R.B. Koslof, Goulston & Storrs PC, Boston, MA; Nicholas Cutais, Goulston & Storrs PC, New York, NY; Richard Asche, Litman, Asche & Gioiella, LLP, New York, NY – Attorneys for Defendants/Counterclaim-Plaintiffs.

November 5, 2024
Wilmington, Delaware



**NOREIKA, U.S. DISTRICT JUDGE**

Before the Court are two motions submitted by Plaintiff Gaucho Group Holdings, Inc. ("Plaintiff" or "Gaucho"): a motion to dismiss Defendants' Counterclaims, and a motion for a preliminary injunction. (D.I. 21, 58). For the reasons that follow, the Court will GRANT-IN-PART the motion to dismiss and DENY the motion for a preliminary injunction.

**I.    BACKGROUND**

    **A.    The Parties**

Gaucho is a Delaware holding company headquartered in Miami, Florida, whose shares trade publicly on the NASDAQ under the ticker symbol "VINO." (D.I. 1 ¶¶ 11-12). Gaucho holds a portfolio of U.S. and Argentine direct and indirect subsidiaries. (D.I. 68, Ex. N at 7, 14). Among them are operating companies in Argentina with real assets such as a winery in Mendoza, a boutique hotel in Buenos Aires, and to-be-developed land in Córdoba. (*Id.* at 3, 14, 32, 64).

Defendants 3i LP and 3i Management LLC (together, "3i") are Delaware entities, each with a principal place of business in New York. (D.I. 1 ¶¶ 13, 17). 3i LP is a hedge fund, and 3i Management is its general partner. (*Id.* ¶¶ 16, 18). 3i Management is, in turn, managed by Maier Joshua Tarlow, a New York individual ("Tarlow," and, together, with 3i, "Defendants"). (*Id.* ¶¶ 20-22). 3i has never been registered as a broker or dealer under the securities laws. (*Id.* ¶¶ 14, 19).

    **B.    The Transaction**

On February 21, 2023, Gaucho and 3i entered into a $5.62 million convertible debt financing deal ("the Transaction"). (*See* D.I. 1, Exs. A-E). To effect the Transaction, the parties executed three contracts relevant here: the Securities Purchase Agreement ("SPA"); the Securities and Pledge Agreement ("Pledge Agreement"); and the Senior Secured Convertible Note ("Convertible Note") (together, "the Transaction Documents"). (*Id.*). The Transaction Documents

1

extended the $5.62 million loan to Gaucho, secured it with certain of Gaucho's assets, and gave 3i the option – but not the obligation – to convert the debt into stock through the purchase of warrants. (*Id.*). At the time of the Transaction, Gaucho knew that 3i was not registered as a broker-dealer. (*See, e.g.*, D.I. 68 ¶ 3 & Ex. A at 22).

The Convertible Note had a one-year maturity date, and, on February 21, 2024, it came due. (D.I. 14, Counterclaims, ¶ 12). According to Defendants, although part of the loan was repaid through stock conversions, Gaucho still owes approximately $3.5 million under the Note. (*Id.* ¶ 13). As a result, on February 21, February 28, and March 6, 2024, Defendants served Guacho with notices of default. (*Id.* ¶ 14; D.I. 18, Exs. C & D). Gaucho did not respond. (D.I. 14, Counterclaims, ¶ 14). During the same period (and through the present), Gaucho made (and continues to make) statements in public filings and press releases that it operates at a heavy loss, is at risk of being delisted, and may be forced to sell some of its Argentine assets, among others, in order to avoid bankruptcy. (*See, e.g.*, D.I. 68 ¶¶ 26-28 & Exs. N, P).

To recoup the outstanding $3.5 million under the Convertible Note, and because they fear that Gaucho is nearing insolvency, Defendants began to avail themselves of their security rights under the Pledge Agreement in July 2024. (*Id.* ¶¶ 12-20). Among other measures, Defendants initiated the process of selling the collateral secured in the Transaction Documents, including the equity interests that control Gaucho's winery and hotel in Argentina. (*Id.*, Ex. I). Gaucho has worked to block those efforts, however, and, in the meantime, moved to unwind the Transaction as unlawfully made. In sum, each party wants what the other has, and the vineyard is on the line – sour grapes indeed.

### C.   Procedural History.

On February 16, 2024, five days before the Note's due date, Gaucho filed this action seeking to rescind the Transaction. (D.I. 1). The Complaint asserts four counts for recission under

2

Exchange Act § 29(b) against 3i, one count for violation of Exchange Act § 20(a) against Tarlow, and one count of unjust enrichment against all Defendants. (*Id.*). On April 5, 2024, Defendants answered the complaint and filed four counterclaims for breach of contract, a preliminary injunction, unjust enrichment, and "return of consideration." (D.I. 14). On April 26, Gaucho moved to dismiss Counterclaims II, III, and IV. (D.I. 21). That motion was fully briefed on May 17. (D.I. 22, 25, 27).

In the meantime, the parties continued to spar over the default and Defendants' right to collect. This prompted each side to file, brief, and then withdraw a preliminary injunction motion. (*See* D.I. 16-19, 23, 34, 35, 36, 46, 52). On July 16, 2024, Defendants gave notice to Gaucho that they had scheduled a foreclosure sale under the Uniform Commercial Code for September 16 ("the UCC Sale"). (*See* D.I. 68, Ex. I). Gaucho responded on August 13, by filing the present preliminary injunction request seeking to halt the UCC Sale. (D.I. 58). The parties completed briefing on the motion on September 24, and the Court held oral argument on October 11. (*See* D.I. 59, 67, 71, 82).[1] In the interim, the parties agreed to stay the UCC Sale and that Gaucho would not sell any of the collateral. (D.I. 66).

## II. **LEGAL STANDARD**

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To prevail on a request for a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) risk of irreparable harm absent preliminary relief; (3) that the balance of the equities are in its favor; and (4) that the public interest is supported by the injunction. *Id.* at 20; *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 202 (3d Cir. 2024). "The

---

[1] Though cumulative, the Court grants Defendants' motion to file a surreply, and takes notice of Plaintiffs' response (an apparent sur-surreply). (D.I. 74, 76).

3

first two factors are the 'most critical.'" *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). A failure to show either a likelihood of success or risk of irreparable harm, therefore, "must necessarily result in the denial of a preliminary injunction." *S. Camden Citizens in Action v. New Jersey Dep't of Env't Prot.*, 274 F.3d 771, 777 (3d Cir. 2001) (citation omitted).

On a motion to dismiss, the court accepts all well-pleaded factual allegations in the complaint or counterclaims as true and views them in the light most favorable to the complaining party, but nonetheless will dismiss any claim that fails as a matter of law or does not contain sufficient factual matter to state a claim to relief that is plausible on its face. *Mayer v. Belichick*, 605 F.3d 223, 229-30 (3d Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. DISCUSSION

#### A. Venue

As a threshold issue, Defendants challenge venue in this Court, arguing that a forum selection clause in the Pledge Agreement stipulates New York as the venue of the parties' choosing for this dispute. *See* Pledge Agreement § 11(f)(ii). The Court disagrees, as Defendants previously waived any objection to venue under Rule 12(h) of the Federal Rules of Civil Procedure. Specifically, Defendants answered the Complaint, rather than moving to dismiss for improper venue, and failed to assert lack of venue as an affirmative defense. (*See* D.I. 14, Answer, at 11-12). That constitutes waiver under Rule 12(h)(1)(B). *See Bos. Sci. Corp. v. Cook Grp. Inc.*, 269 F. Supp. 3d 229, 239 (D. Del. 2017) ("Defendants failed to raise the venue defense in a Rule 12 motion or responsive pleading. This triggers application of the waiver doctrine."); *Albright v. W.L. Gore & Assocs., Inc.*, No. 02-304 (GMS), 2002 WL 1765340, at *3 (D. Del. July 31, 2002) ("The plain language of Rule 12(h) thus makes clear that the improper venue defense is waived [specifically] when the defense is not asserted in a Rule 12 motion to dismiss or a responsive pleading."). Additionally, Defendants admitted in their Answer that "[v]enue is proper in this

4

Court because the Securities Contracts expressly provide that any dispute arising under the Securities Contracts must be brought in state or federal courts located in Delaware." (D.I. 14, Answer, ¶ 10). They then affirmatively made the same allegation in their Counterclaims. (*Id.*, Counterclaims, ¶ 7).

Moreover, even if Defendants' venue challenge were timely, it fails for two additional reasons. First, the Pledge Agreement's venue provision is permissive, not mandatory, and unilateral, not bilateral, insofar as it only requires Gaucho to submit to jurisdiction in New York if **Defendants** bring a lawsuit **there.** Pledge Agreement § 11(f)(ii). Nothing in that clause prevents **Gaucho** from bringing suit in **this Court**. And, second, the Pledge Agreement's forum selection clause conflicts with the forum selection clauses the other two Transaction Documents at issue here, the SPA and Convertible Note, both of which prescribe Delaware as the venue for disputes. (D.I. 1, Ex. A, SPA § 9(a); *id.*, Ex. B, Note § 29). Accordingly, the Court finds that venue is proper here and will address the merits of Plaintiff's preliminary injunction motion.

### B. Preliminary Injunction Motion

#### 1. Likelihood of Success on the Merits

The Court begins with the likelihood that Gaucho will succeed on the merits of its case. Although the Complaint alleges multiple theories of liability, Gaucho exclusively briefed and argued the merits analysis as to the prospective success of its Section 29(b) claims.[2] Therefore, the Court evaluates Plaintiff's likelihood of success on the merits of those claims only. *See Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 202 (3d Cir. 2004).

Section 29(b) provides that a contract "shall be void" if it was "made in violation of," or "the performance of [it] involves the violation of," any other part of the Exchange Act. 15 U.S.C.

---

[2] At oral argument, Gaucho's counsel acknowledged that it was only moving on this ground. (D.I. 82 at 4:11-16).

§ 78cc(b). As numerous courts have previously acknowledged, Section 29(b) is the legislative enshrinement of the "common-law principles of illegal bargain," which hold that a "contract [is] invalid where [it] was made illegally or requires illegal performance." *EMA Fin., LLC v. AppTech Corp.*, No. 21-6049 (LJL), 2022 WL 4237144, at *7 (S.D.N.Y. Sept. 13, 2022) (citation and ellipses omitted). Such unlawful contracts may be rescinded at the option of the injured party. *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 387 (1970); *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 18-19 (1979).

A plaintiff must demonstrate three conditions to establish a violation of Section 29(b): (1) the contract at issue involved a prohibited transaction, (2) the plaintiff is in contractual privity with the opposing party, and (3) the plaintiff is in the class of persons the securities laws were designed to protect. *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 205 (3d Cir. 2006); *Scott v. Vantage Corp.*, No. 17-448 (MPT), 2018 WL 5919743, at *5 (D. Del. Nov. 13, 2018). Gaucho focuses on the first prong here, asserting that the SPA is an unlawful contract that is voidable and subject to recission because Defendants operate as an unregistered broker-dealer in violation of Section 15(a) of the Exchange Act. 15 U.S.C. § 78o(a)(1) ("It shall be unlawful for any broker or dealer . . . to effect any transactions in . . . any security . . . unless such broker or dealer is registered.").

Gaucho's argument, however, has been rejected nearly unanimously as a matter of law by the many courts to consider it over the past fifty years.[3] The Third Circuit has twice ruled, in this

---

3   *See, e.g.*, *Drasner v. Thomson McKinnon Sec., Inc.*, 433 F. Supp. 485, 501-02 (S.D.N.Y. 1977); *Zerman v. Jacobs*, 510 F. Supp. 132, 135 (S.D.N.Y. 1981); *Slomiak v. Bear Stearns & Co.*, 597 F. Supp. 676, 681-82 (S.D.N.Y. 1984); *Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co.*, 794 F. Supp. 1265, 1288 (S.D.N.Y. 1992); *Found. Ventures, LLC v. F2G, LTD.*, No. 08-10066 (PKL), 2010 WL 3187294, at *6-7 (S.D.N.Y. Aug. 11, 2010); *Frati v. Saltzstein*, No. 10-3255 (PAC), 2011 WL 1002417, at *5 (S.D.N.Y. Mar. 14, 2011); *Antares Mgmt. LLC v. Galt Grp. Cap. Inc.*, No. 12-6075 (TPG), 2013 WL 1209799, at *8-

6

very context of convertible notes, that "only unlawful **contracts** may be rescinded, not unlawful **transactions** made pursuant to lawful contracts." *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 200 (3d Cir. 2001) (citation omitted); *Berckeley*, 455 F.3d at 207. The key is whether the challenged agreement can be performed without violating the securities laws. *Berckeley*, 455 F.3d at 205-06 ("[Plaintiff] must demonstrate a direct relationship between the violation at issue and the performance of the contract."); *GFL Advantage Fund*, 272 F.3d at 202. If it can, the contract is not susceptible to rescission – even if one of the counterparties later perpetrates an unlawful transaction. *Berckeley*, 455 F.3d at 206; *GFL Advantage Fund*, 272 F.3d at 202. In this precise situation of interlocking Section 15 and 29 claims, as the Third Circuit has already held, "downstream sales of unregistered [company] shares . . . are too attenuated to establish a claim under Section 29(b)." *Berckeley*, 455 F.3d at 207; *GFL Advantage Fund*, 272 F.3d at 202.

That holding has been echoed more than a dozen times in the last five years by courts in the Second Circuit, the country's leading jurisdiction for securities actions like this one.[4] The

---

9 (S.D.N.Y. 2013); *Omega Overseas Partners, Ltd. v. Griffith*, No. 13-4202 (RJS), 2014 WL 3907082, at *4 (S.D.N.Y. Aug. 7, 2014).

[4] *See, e.g.*, *NexPoint Diversified Real Est. Tr. v. Acis Cap. Mgmt., LP*, 80 F.4th 413, 421 (2d Cir. 2023) ("Most district courts in this Circuit have similarly interpreted § 29(b) of the Securities Exchange Act of 1934 . . . to authorize rescission only when performance of the contract *itself* is unlawful, not merely when the conduct of a party to the contract is unlawful."); *Oberlander v. Coinbase Glob. Inc.*, No. 23-184, 2024 WL 1478773, at *4 (2d Cir. Apr. 5, 2024); *Ammann v. Sharestates, Inc.*, No. 21-2766 (JS), 2024 WL 1956237, at *8 (E.D.N.Y. Mar. 21, 2024); *Risley v. Universal Navigation Inc.*, 690 F. Supp. 3d 195, 216-17 (S.D.N.Y. 2023); *EMA Fin., LLC v. TPT Glob. Tech, Inc.*, No. 20-8781 (VSB), 2023 WL 7043227, at *5 (S.D.N.Y. Oct. 26, 2023); *Acuitas Cap., LLC v. Ideanomics, Inc.*, No. 23-2124 (PAE), 2023 WL 4373314, at *1 (S.D.N.Y. June 21, 2023); *Rhee v. SHVMS, LLC*, No. 21-4283 (LJL), 2023 WL 3319532, at *5 (S.D.N.Y. May 8, 2023); *DarkPulse, Inc. v. FirstFire Glob. Opportunities Fund, LLC*, No. 21-11222 (ER), 2023 WL 199196, at *11 (S.D.N.Y. Jan. 17, 2023); *Cyber Apps World, Inc. v. EMA Fin., LLC*, 645 F. Supp. 3d 281, 285-86 (S.D.N.Y. 2022); *EMA Fin., LLC v. AppTech Corp.*, 2022 WL 4237144, at *6-7; *EMA Fin., LLC, v. Joey New York Inc.*, No. 17-9706 (VSB), 2022 WL 292920, at *18 (S.D.N.Y. Feb. 1, 2022); *E. Cap. Invs. Corp. v. GenTech Holdings, Inc.*, 590 F. Supp.

Fourth Circuit has taken the same position. *See Occidental Life Ins. Co. of N. Carolina v. Pat Ryan & Assocs., Inc.*, 496 F.2d 1255, 1266 (4th Cir. 1974). The reasoning of those cases is persuasive,[5] and the Court holds that a claim for Section 29(b) rescission premised on a counterparty's purported Section 15(a) broker-dealer liability must be based on a violation of the contract itself, not later downstream transactions. In other words, "[a] party cannot enjoy the benefits of a contract and then relieve itself of any obligations under that contract on the sole basis that its counterparty engages in business as a broker-dealer and should have registered with the SEC." *AppTech*, 2022 WL 4237144, at *6 ("Even an unregistered broker-dealer is permitted to enter contracts and have those contracts honored.").

Perhaps acknowledging this state of the law, Gaucho takes a nuanced approach. It asserts that the mere "making" of the agreements here "effected a transaction in securities," and, because 3i is not a registered broker-dealer, it follows that 3i "could not lawfully enter into the Agreements [in the first place] without violating § 15(a)." (D.I. 71 at 3-4). That is, "as an unregistered dealer, 3i could not lawfully enter into [the Transaction]." (D.I. 59 at 7-8). In advancing that argument,

---

3d 668, 675-76 (S.D.N.Y. 2022); *Yi v. GTV Media Grp. Inc.*, No. 21-2669 (VM), 2021 WL 2535528, at *5 (S.D.N.Y. June 18, 2021); *EMA Fin., LLC v. Vystar Corp.*, 19-1545 (ALC), 2021 WL 1177801, at *2-3 (S.D.N.Y. Mar. 29, 2021); *EMA Fin., LLC v. NFusz, Inc.*, 509 F. Supp. 3d 18, 37 n.22 (S.D.N.Y. 2020); *Tanzanian Royalty Expl. Corp. v. Crede CG III, Ltd.*, No. 18-4201 (LGS), 2019 WL 1368570, at *13 (S.D.N.Y. Mar. 26, 2019); *LG Cap. Funding, LLC v. ExeLED Holdings, Inc.*, No. 17-4006 (RJS), 2018 WL 6547160, at *5 (S.D.N.Y. Sept. 28, 2018).

5  Plaintiff relies heavily on the Fifth Circuit's decision in *Eastside Church of Christ v. Nat'l Plan, Inc.*, 391 F.2d 357, 359 (5th Cir. 1968). That case is less persuasive given that it is more than 65 years old, dramatically predates the bevy of recent convincing authority mentioned above, *supra* n.4, and concerns a different financial instrument (bonds rather than convertible loans). In any event, both the Second and Third Circuits have directly stated that the Fifth Circuit's Section 29(b) jurisprudence is "consistent" with theirs. *GFL Advantage Fund*, 272 F.3d at 201; *NexPoint*, 80 F.4th 413 at 421.

Gaucho essentially focuses on 3i's pre-contract conduct, which it says was unlawful because 3i had bought and sold securities without registration before entering the contract.

Gaucho's "making" argument, however, is foreclosed by the Third Circuit, which has said that, for both "the phrases 'made in violation of' and 'the performance of which involves the violation of' . . . [t]he test, as we applied it in *GFL Advantage Fund*, is whether the securities violations are inseparable from the underlying agreement between the parties." *Berckeley*, 455 F.3d at 206. The foundational principle is that rescission is improper when the violation complained of is merely "collateral or tangential" to the contract between the parties. *Id.*; *GFL Advantage Fund*, 272 F.3d at 202; *Slomiak v. Bear Stearns*, 597 F. Supp. at 682. Instead, Section 29(b) may be invoked only when the alleged violation is not "too attenuated" from the challenged conduct, *Berckeley*, 455 F.3d at 206-07, "independent of the parties' respective obligations," *GFL Advantage Fund*, 272 F.3d at 202, or "on the basis of some other contracts that the [accused] party has made with other third parties," *AppTech*, 2022 WL 4237144, at *7.[6]

Other courts have followed suit in holding that Section 29(b)'s core tenet – that only unlawful **contracts** may be rescinded, not unlawful **transactions** – "applies both to claims regarding the making of a contract as well as contract performance." *Cyber Apps World*, 645 F. Supp. 3d at 286; *Vystar*, 2021 WL 1177801, at *3 ("[T]he [convertible] notes were neither made nor performed in violation of any federal securities laws as is required for rescission under Section 29(b)."); *AppTech*, 2022 WL 4237144, at *7 ("[I]t does not follow from the fact that [defendant] previously has chosen to exercise and sell in connection with other contracts that the Agreements

---

[6] Gaucho's approach additionally fails insofar as it seeks to assert a direct violation of Section 15(a), for which there is no private cause of action. *See TPT Global*, 2023 WL 7043227, at *8; *GTV Media*, 2021 WL 2535528, at *4. Such efforts have been routinely rejected in the Section 29(b) context. *See, e.g.*, *Cyber Apps World*, 645 F. Supp. 3d at 285-86; *Vystar*, 2021 WL 1177801, at *3.

should be considered to be void."). That is further borne out by the case law, much of which involves repeat lawsuits against the same purported broker-dealers for the same alleged unregistered conduct.[7]

Accordingly, for "a contract [to be] unlawful based on the defendant's status as an unregistered broker-dealer in violation of the Exchange Act, the contract seeking to be rescinded – and not just the Exchange Act – must require the defendant to register as a broker-dealer." *GTV Media*, 2021 WL 2535528, at *5; *NFusz*, 509 F. Supp. 3d at 37 n.22.  "Thus, rescission pursuant to Section 29(b) would only be available here if the contract itself required [defendants] to register as a broker-dealer."[8] *Cyber Apps World*, 645 F. Supp. 3d at 286; *GenTech*, 590 F. Supp. 3d at 676; *Joey New York*, 2022 WL 292920, at *18 ("Put simply, . . . it is essential to identify a provision in the agreement requiring Plaintiff to register as a broker-dealer." (quotation marks omitted)).

Here, Gaucho points to nothing in the Transaction Documents that would have required 3i to register as a broker-dealer, either to resell stock or extend Plaintiff the $5 million convertible loan.  Indeed, Gaucho's counsel admitted at oral argument that "in the contract there is [no]

---

[7] For instance, alleged unregistered broker-dealer EMA Financial has defeated Section 29(b) rescission in at least six actions over the course of four years – all pertaining to convertible notes.  *See, e.g.*, *EMA Financial v. TPT Global*, 2023 WL 7043227; *Cyber Apps World v. EMA Financial*, 645 F. Supp. 3d 281; *EMA Financial v. AppTech*, 2022 WL 4237144; *EMA Financial v. Joey New York*, 2022 WL 292920; *EMA Financial v. Vystar*, 2021 WL 1177801; *EMA Financial v. NFusz*, 509 F. Supp. 3d 18.

[8] Gaucho's novel construction is rife with other problems.  For one, taking the interpretation to its logical extreme, any entity in violation of any law or rule under the Exchange Act – however minor – would have deals threatened by rescission.  To illustrate, a public company in potential violation of, say, a non-scienter-based books and records violation under Exchange Act § 13, 15 U.S.C. § 78m, could not take on debt or issue securities without fear of their counterparty invoking Section 29(b).  Such a broad reading would chill capital markets, is out of sync with the statute's intention, and is directly refuted by the extant case law.  *See, e.g.*, *Slomiak v. Bear Stearns*, 597 F. Supp. at 683 ("[A] disclosure [violation] under Rule 10b–16 . . . is not . . . the kind of circumstance Section 29(b) is intended to redress.").

requirement that [3i] be registered." (D.I. 82 at 11:1-5, 21:5-10). Gaucho's public filings going back to 2021 – two years before the Transaction – also acknowledge that Defendants were not registered, again supporting that the contract did not require registration. (*See, e.g.*, D.I. 68 ¶ 3 & Ex. A at 22). As for Defendants' secondary stock sales, the SPA contains numerous passages that anticipate 3i's "resale" of its converted shares.[9] So does the Complaint. (*See* D.I. 1 ¶¶ 74-75 (discussing "3i's anticipated resale of the aforesaid securities")). And counsel conceded as much at oral argument. (*See* D.I. 82 at 19:14-22 (acknowledging that "the SPA contain[s] passages that anticipate secondary sales by 3i" as "part of the arrangement")).

In sum, "the SPA permitted, but it did not mandate, [Defendants] to sell securities purchased thereunder or act in any other way as a broker-dealer. The SPA thus is not an inherently unlawful contract subject to rescission under Section 29(b)." *Acuitas*, 2023 WL 4373314, at *1 (internal citation omitted); *GenTech*, 590 F. Supp. 3d at 676. Accordingly, the Court finds that Gaucho has not shown that it is likely to succeed on the merits of its Section 29(b) claims.[10]

---

[9]  *See, e.g.*, SPA § 3(ee) ("It is understood and acknowledged by the Company that . . . none of the Buyers have . . . agreed with the Company or any of its Subsidiaries, to desist from effecting any transactions in or with respect to . . . any securities of the Company . . . [and] one or more Buyers may engage in hedging and/or trading activities."); *id.* ("The Company acknowledges that such aforementioned hedging and/or trading activities do not constitute a breach of this Agreement, the Notes, the Warrants, or any other Transaction Document or any of the documents executed in connection herewith or therewith."); *id.* § 3(hh) ("The Company is currently eligible to register the Registrable Securities . . . for resale by the Buyers."); *id.* § 4(c) (contemplating a "date on which the Buyers shall have sold all of the Registrable Securities").

[10] The Court also doubts that Gaucho could succeed on the merits of either of its other claims. The Exchange Act § 20(a) claim for control liability against Tarlow depends on asserting a primary violation under Sections 15 and 29(b). Thus, because the Court finds those primary violations unlikely to succeed, the Section 20 claim would fall for the same reasons. *See, e.g.*, *Oberlander v. Coinbase*, 2024 WL 1478773, at *4 n.8 ("Because of a lack of a primary violation under the Exchange Act, the district court properly dismissed the Section 20 claim for control-person liability."). Similarly, Plaintiff fails to allege

### 2. Remaining Factors

Because the Court finds that Gaucho has failed to demonstrate a likelihood of success on the merits, it need not evaluate the other factors of the analysis: irreparable harm, balancing of the equities, and public interest. *See, e.g.*, *S. Camden Citizens in Action*, 274 F.3d at 777. Gaucho's motion for a preliminary injunction is denied.

### C. Motion to Dismiss

Next, the Court considers Gaucho's motion to dismiss Counts II, III, and IV of Defendants' Counterclaims. (*See* D.I. 21). Gaucho does not challenge Count I for breach of contract. The Court finds that Defendants have failed to state a claim in Counts II and IV, and, therefore, will GRANT-IN-PART the motion to dismiss.

Count II seeks a preliminary and permanent injunction. (D.I. 14, Counterclaims, ¶¶ 37-41). Pursuant to the Federal and Local Rules, a party must make a separate motion for an injunction. Fed. R. Civ. P. 7(b)(1); Local Rule 7.1.2(a). Both sides have seemingly recognized this by filing, fully briefing, and then withdrawing standalone preliminary injunction motions earlier this year. (*See* D.I. 16, 17, 19, 23, 34, 35, 36, 46, 52). To the extent Defendants continue to seek a preliminary injunction, they must make a new motion for one. The Court will therefore GRANT Plaintiff's motion and will dismiss this count of the Counterclaims.

Count III seeks to assert a claim for unjust enrichment. (D.I. 14, Counterclaims, ¶¶ 42-48). To state a claim for unjust enrichment under Delaware law,[11] a plaintiff must adequately allege: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by

---

required elements of an unjust enrichment claim, such as Plaintiff's impoverishment, Defendant's enrichment, and the absence of justification. *Cf.* Section III.C, *infra*.

[11] Per the SPA, Delaware law governs here. SPA § 9(a).

law." *MIG Invs. LLC v. Aetrex Worldwide, Inc.*, 852 F. Supp. 2d 493, 512-13 (D. Del. 2012) (citation omitted). 3i has satisfied its pleading burden for all five elements.

First, the Counterclaims allege an enrichment and an impoverishment under the Transaction. Gaucho received more than $5 million of funding from 3i through the Convertible Note. (D.I. 14, Counterclaims, ¶¶ 8, 9, 13). That is an enrichment to Gaucho. According to 3i, Gaucho has defaulted on its payments, with an outstanding balance of nearly $3.5 million. (*Id.* ¶¶ 13, 14, 34, 36). That's an impoverishment to 3i. There is a direct relationship between those two, because Gaucho allegedly received the money at 3i's expense and on the condition it would be repaid. (*Id.*). And, finally, it would not be fair to allow Gaucho to keep the overdue amount without some sort of compensation to 3i.

The Court also finds that this claim is not duplicative of Defendants' breach of contract claim in Count I, because, as here, where the validity of the contract is in dispute, a party may bring an unjust enrichment claim in the alternative. *See Aetrex Worldwide*, 852 F. Supp. 2d at 513; *Resnik v. Woertz*, 774 F. Supp. 2d 614, 633 (D. Del. 2011) ("[C]laims of unjust enrichment may survive a motion to dismiss when the validity of the contract is in doubt or uncertain."); Fed. R. Civ. P. 8(d)(2). Therefore, the Court will DENY Guacho's motion to dismiss Count III of the Counterclaims.

Counterclaim Count IV is entitled "Return of Consideration." (D.I. 14, Counterclaims, ¶¶ 49-50). As Gaucho correctly argues, return of consideration is not a cognizable cause of action in this Court. *See Iqbal*, 556 U.S. at 678. And, in any event, this claim is duplicative of 3i's unjust enrichment claim insofar as it seeks an equitable remedy in the event of recission of the SPA. Accordingly, the Court will GRANT Gaucho's motion and dismiss Count IV of the Counterclaims.

Lastly, 3i requests the opportunity to amend its Counterclaims, while Gaucho seeks dismissal with prejudice. (D.I. 22 at 5; D.I. 25 at 4). The standard for repleading is liberal. Fed. R. Civ. P. 15(a)(2). This would be Defendants' first opportunity to amend their Counterclaims, and Gaucho offers no reason as to why it would be futile to do so. Accordingly, the Court will DENY Gaucho's request to dismiss with prejudice, and 3i is granted leave to amend within 30 days.

### IV.     CONCLUSION

For the foregoing reasons, the Court will GRANT-IN-PART the motion to dismiss (D.I. 21) and DENY the preliminary injunction (D.I. 58). An appropriate order will follow.